BOUTALL, Judge.
A contractor sues for extra work allegedly done pursuant to a construction contract and the owner reconvenes for liquidated damages for delay in completion of the contract. From a judgment granting only a portion of the main demand and awarding liquidated damages on the reconventional demand, the contractor has appealed. We affirm.
Southbend Contractors, Inc., entered into a contract with the Parish of Jefferson to repair, replace and modify certain subsurface water lines within the area of East Jefferson Water District No. 1 at a price of $493,208.73. The contract provided that the contractor shall commence work within ten days from the date of the written order to proceed issued by the Parish and shall complete all work under the contract within two hundred and forty calendar days from the date of the order to proceed. The contract further provided for damages for a delay in completion of the contract at the rate of $100.00 per calendar day. The contract was not completed by the contractor in accordance with its terms and a series of discussions and negotiations were had by the Parish and the contractor in order to bring about the completion of the contract and settlement of the disputes between the parties. Finally, a partial agreement was *1160 reached between the parties and the contract was finally completed, leaving the issues not agreed upon to be settled by court action. Accordingly, Southbend brought this suit for the cost of extra work done beyond the terms of the contract, and the Parish reconvened for its contractual liquidated damages for delay.
Southbend sued for slightly more than $50,000.00 contending that it incurred additional labor, equipment and material costs plus overhead as a result of differing site conditions at certain specified locations. The defense of the Parish to this claim is that much of the extra work was a result of the mistakes and errors of the contractor, that some of the work was included in the contract and the contract price payable on a unit cost basis, and that some of the work was due to the delay of the contractor itself in not diligently proceeding under the contract. The Parish conceded that there was due for extra exploratory work not covered under the contract forty six hours at $87.79 per hour equalling a total of $4,038.34. The trial judge awarded Southbend only that amount on the main demand. We agree.
The issue of whether or not the items claimed constituted extra work beyond the contract depends upon the testimony of the witnesses produced by the litigants in this case. Southbend produced the testimony of James B. Graham, Jr., President of South-bend Contractors, Inc., and Gerard J. Black, Secretary-Treasurer of Mollere-Black Services, Inc. Both of these witnesses testified in conformity with the plaintiff’s position. Opposed to this, the Parish produced the testimony of Robert E. Rice, the chief field engineer for Jefferson Parish, who was the general supervisor on the job, and Geoffrey Nordgren, who was the resident engineer with Burks and Associates, employed by the Parish for this particular project. There is a direct conflict in the testimony of these two sets of witnesses which can only be resolved by an evaluation of the credibility of the witnesses. Although the trial judge did not give reasons for judgment, it is apparent that he gave greater credibility to the witnesses produced by the Parish. During the course of the trial, he noted that there was an issue of credibility and was particularly concerned with the relationship of witness Black to the plaintiff and his participation in any amount that may be recovered by Southbend. The evidence shows that Black was an officer of the company which subcontracted the labor furnished on the job, despite the contract’s requirement that labor could not be subcontracted unless approved by the Parish, and that that company was the major participant in whatever judgment might be obtained. It is apparent that the trial judge found the credibility of the Parish’s witnesses to be stronger than the credibility of plaintiff’s witnesses and resolved the issues in favor of the Parish. Thus, there is presented to us the classic issue of “evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding” established as a standard of appellate review in the case of Canter v. Koehring Co., 283 So.2d 716 (La.1973) and further explained in Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). We have examined the record and we agree with the conclusion of the trial judge. Accordingly, we affirm the judgment on the main demand.
The other matter before us is the judgment on the reconventional demand in favor of the Parish awarding it liquidated damages in the amount of $36,500.00, computed at the rate of $100.00 per day for 365 days.
The appellant has assigned two specifications of error: 1) the trial court erred in holding that Southbend was liable for liquidated damages for delay in view of the fact that the Parish had made full payment under the original contract and had accepted the work as complete; 2) additionally, the trial court erred in finding that Southbend completed the work one year after the original completion date of the contract. The calendar of events shows that the completion date of the contract would have been October 24, 1977, and that the Parish, through its engineers, granted a thirty-five *1161 day extension because of rain, etc., to November 28,’ 1977. On May 18, 1978, the Parish wrote a letter to Southbend notifying it that it was in default and that the liquidated damages would be imposed. This was followed on July 19, 1978, with another default letter to the same effect. On November 27, 1978, an escrow agreement was entered into between the contractor and the Parish in which the Parish agreed that the work called for in the contract had been substantially completed with the exception of installation of seven fire hydrant extensions to be installed later and that the Parish would accept the work as substantially complete, file a notice of acceptance in the mortgage records, and forty-five days later, after the clear lien and privilege certificate had been secured, the Parish would pay $41,305.35, calculated to be the balance due under the contract price minus $7,000.00 held in escrow for the completion of the fire hydrants.
Superimposed upon this calendar of events is the testimony of Southbend’s witnesses who testified that the job was substantially completed prior to April 21, 1978, when Southbend wrote a letter requesting recognition of that fact, and testimony from the Parish witnesses that some parts of the water lines were being used, and that final inspections were being made. However, the evidence is clear that the contract work was not completed at that time and that a considerable amount of installation of new items and repair of a number of old items still remained. We note for example that even as far as August 11, 1978, the contractor was involved in installing three fire hydrants and fourteen extensions, and on October 7, 1978, installed another fire hydrant and did other miscellaneous work. There still remained the seven fire hydrant extensions to be done on November 27, 1978, at the time of the escrow agreement. Indeed, the evidence shows that there can be no serious dispute to the fact that the contract was not finished prior to April of 1978, nearly five months post extended completion date and that it took two default letters and much negotiation by the Parish to finally cause the later work to be done in August and October prior to the November 27, 1978, escrow agreement. The trial judge found that the date of the agreement was the cut off date for completion of the contract (in fact, the remaining work was done in January of 1979, and approved in February of 1979), and we agree. The history of the work record of Southbend beyond the proposed completion day shows only sporadic work efforts and occasional return to work to make repairs or complete certain specific job items after urging by the Parish.
Nevertheless, Southbend contends to us that the effect of the acceptance of the work by the Parish in the November, 1978, agreement is such as to preclude any claim for delayed damages. Appellant’s argument here is threefold: that the contract provisions require the delayed damages to be deducted from the contract price, and since the price was paid, the Parish is es-topped from later claiming delayed damages; that as a matter of law acceptance of the work and payment of the contract price operates as a waiver of liquidated damages; and that the agreement of November, 1978, constitutes in fact and law a waiver or forgiveness of the claim for damages.
We perceive no basis why estoppel should apply in this case. There is no contention by Southbend that it was mislead to its detriment or that it suffered any damages because of any act of commission or omission of the Parish. The contract certainly does give the Parish a right to deduct its liquidated damages from the contract price but there is no showing that the contractor relied upon any statement of the Parish that it would forgive the delay payments. Under the facts of this ease where there was an ongoing dispute between the contractor and the owner for a number of months concerning incompletion of the work and considering the Parish’s default letters notifying the contractor of the liquidated damages provisions, it is obvious that whatever actions the contractor took were simply in furtherance of its quest for payment for completion of the contract. If the Parish should decide to pursue payment of *1162 its damages in another fashion than that provided for its benefit in the contract, we see no prohibition. In speculation, we remark that considering the escrow agreement that was finally entered into, it would appear that how assiduously the Parish would seek to enforce its liquidated damages would have perhaps depended in part on what additional claims beyond the contract price were to be made by the contractor.
Similarly, we cannot consider that the action of the Parish in entering that escrow agreement constituted a waiver either in fact or in law. There is no evidence which indicates any waiver of claim during the contract period, during the ongoing dispute between the parties as to completion of the contract, or during the negotiations which were the basis for signing the agreement. The agreement itself does not contain any waiver of the Parish’s claim. That agreement is simply what it was apparently intended to be, i.e., a device by which the contractor could collect the price for work admittedly done, create a cutoff period for filing of any liens or privileges, etc., and leave those questions that were in dispute to further negotiation or court solution. The defense of waiver is a special one and the burden of proof is on the defendants (here defendants in reconvention) to show that the other party had knowledge of the defects and intentionally waived the same. Waiver can result only from the intentional relinquishment of a known right. See Michel v. Efferson, 223 La. 136, 65 So.2d 115 (La.1952), Hemenway Co., Inc. v. Bartex, Inc., of Texas, 373 So.2d 1356 (La.App. 1st Cir. 1979). Not only is there no evidence in this case to show intentional waiver, but the mere acceptance that the work was completed does not as a matter of law create a waiver of a claim not based upon the quality of the work but upon the delay in performing. Appellant’s reliance upon the cases of Florida Ice Machine Corporation v. Branton Insulation, Inc., 290 So.2d 415 (La.App. 4th Cir. 1974) and Charles Cloy General Contractors, Inc. v. DiVicenti Brothers, Inc., 308 So.2d 495 (La.App. 1st Cir. 1975) is misplaced. Additionally, we point out that his citation of the Hemenway case, supra, is incorrect and misleading, and that case actually supports the owner’s claim for defects.
For the reasons assigned, the judgment is affirmed. Appellant to pay all costs of «these proceedings.
AFFIRMED.