930 So.2d 1135 (2006)
Willie James TYLER, Plaintiff-Appellant
v.
RAPID CASH, LLC, Defendant-Appellee.
No. 40,656-CA.
Court of Appeal of Louisiana, Second Circuit.
May 17, 2006.
*1136 Anthony J. Bruscato, Monroe, for Appellant, Willie James Tyler.
Paul Loy Hurd, Matthew Maxwell Courtman, Monroe, for Appellees, Rapid Cash, LLC and James Hampton.
Before BROWN, GASKINS and DREW, JJ.
DREW, J.
Willie Tyler appeals from a judgment of the Monroe City Court rejecting his demands against defendants, Rapid Cash, LLC ("Rapid Cash"), and James Hampton. We reverse.

FACTS
This dispute concerns the surrender by Mr. Tyler of his car to Hampton under an agreement executed by these two men at Hampton's place of employment, Rapid Cash, in Monroe. Tyler urges that he is entitled to the return of his car or its value because the agreement was illegal.
Rapid Cash is a small finance company with offices in north Louisiana. At the time of the transaction in question, Hampton was the office manager at the Monroe location. He and three other family members own the company.
Tyler owned a 1991 Toyota Camry that he purchased in 2003 for $2,000.00. Tyler is a cancer patient and testified that he needed the car to drive from his home in Monroe to Shreveport for his cancer treatments. In March of 2004, Tyler met with an acquaintance from his neighborhood, Shawn Wilson, whose home had recently been burglarized. Tyler related that Wilson asked him if she could borrow money from him. She suggested that the two go to Rapid Cash, and Tyler agreed.
According to Hampton, Tyler first dealt with another employee of Rapid Cash but did not bring with him sufficient documentation of income that was required to obtain a loan from the business. Hampton testified that the other Rapid Cash employee then referred Tyler to him. Hampton testified that he then offered, in his individual capacity, to buy Tyler's Camry from him for $225.00, and that Tyler accepted the offer. The two men executed a contract, printed from a Rapid Cash computer, which provided as follows:

Motor vehicle Bill of Sale

March 6, 2004
I Willie James Tyler . . . sell outright to James Hampton . . . one TOYT CAY (White) vin # . . . .

*1137 Total agreed to price is $225.00. Payment is agreed by Seller and Buyer as: $225.00 non refundable payment, paid by cash on March 6, 2004. Buyer is responsible for all local, city, county and / or state taxes and / or tariffs resulting from purchase.
The above motor vehicle is being purchased by the buyer in an "as is" condition, with no stated or implied warranties by the seller, which is understood by the Buyer and Seller, at the time of this sale, to be no warranties what so ever.
Rapid Cash was not a named party to the transaction and did not loan Tyler any money. The agreement is signed by both Tyler and Hampton and is notarized and witnessed by two witnesses. Tyler acknowledged in court that he signed the agreement. Tyler also endorsed his certificate of title and gave it to Hampton. Tyler said that Wilson received the proceeds of the "sale" and moved away from the area without repaying the money.
Hampton did not take possession of the car at the time. As he explained in his testimony:
A: [O]n the 6th I told Mr. Tyler that I would take future delivery of the car. That he could either repay me the money after 14 days or I, he could drop the vehicle off at my office. And he did not do either. And so, I'm sure of the exact date uh, in between the 20th and say the 27th I uh, went to Mr. Tyler's house and I picked up the vehicle personally. I said I'm here to pick up your, uh, the vehicle you sold me and he gave me the keys and uh.
. . . .
Q: Because he didn't bring the money to you in 14 days you went down there and picked up the car?
A: Yes, sir.
Q: If he had brought the money to you within 14 days?
A: I would have voided the transaction.
Hampton recovered the car along with his brother Bill Hampton, another partner in Rapid Cash, whose personal vehicle is equipped with a tow boom. Hampton said that at the time he got the car from Tyler at Tyler's house, Tyler told him that he wanted to void the transaction and repay the $225.00 by April 3, but Tyler did not come in and repay the money by that date. Hampton, who had performed some repairs on the car, then sold Tyler's car to a third party at a wholesale price of around $1,000.00. Hampton estimated that he enters into between five and ten similar transactions per month with potential Rapid Cash customers who do not qualify for loans from Rapid Cash.
Tyler testified that when he went into Rapid Cash on March 6, he did not intend to sell his car, and in particular, he did not intend to sell his car for so little money. He explained that the car was in good working order. Tyler stated that he understood that he was putting his car up for collateral for a loan, and that he would lose his car if the loan were not repaid. Tyler did not testify about the time agreed upon for repayment of the loan, nor did he testify that the loan was to be repaid with interest. Tyler testified that when Hampton came to pick up the car from his residence, Hampton assured him that if he repaid the money, he would get his car back. Again, Tyler did not relate a time period agreed upon for repayment.
Tyler stated that on an unspecified date in late April or early May, Hampton's secretary at Rapid Cash called to ask him to come in and repay the loan. Tyler stated that when he went to Rapid Cash with the money, likely early in May 2004 after receiving his Social Security check, Hampton told him that the car had already been *1138 sold. Tyler testified that in addition to losing the car, he had several hundred dollars' worth of tools in the trunk of his car that he did not recover.
Orland Lloyd, used car sales manager at a local Toyota dealership, testified that a car like Tyler's Camry would have been worth roughly $2,450.00, the National Automobile Dealers Association ("NADA") book retail valuation. The notary who notarized the sale agreement, Marvin Ramsey, is in the used car business as well, and he testified at trial but did not see the car and did not offer a value for the car.
When Tyler was unable to retrieve his car, he filed suit against Rapid Cash, seeking the value of the car as well as damages under the Louisiana Unfair Trade Practices and Consumer Protection Law (UTPCPL). He did not seek damages for the lost tools in the petition. At trial, Tyler was allowed to verbally amend his petition to add Hampton as a defendant but was not allowed to add a claim for the lost tools. After hearing the evidence, the court provided verbal reasons for deciding the case in favor of the defendants. The court concluded that the transaction was between Tyler and Hampton, so the court found no cause of action against Rapid Cash. The court found that the transaction was lawful, that it was simply a "bad deal" for Tyler, and that Hampton was entitled to keep the car when Tyler failed to repay the money within two weeks. Tyler now appeals.

DISCUSSION
Tyler urges three assignments of error on appeal. The first two challenge the trial court's ruling that the transaction was a valid conditional sale, and the third challenges the court's refusal to award damages for conversion or the violation of the UTPCPL.
The written agreement between the parties in this case is a simple contract of sale. Even though the agreement appears to be invalid as an authentic act because no notary was present when the parties and witnesses signed, the agreement appears to be an act under private signature since Tyler acknowledged in court that he signed the document. La. C.C. arts. 1834 and 1836. Testimony may be admitted to prove that such an agreement was, inter alia, a simulation. La. C.C. art. 1848.
Both Taylor and Hampton testified that the written agreement did not encompass their entire agreement. Indeed, both testified that the "sale" agreement would be voided if Tyler repaid the loan. Hampton testified that the term of the loan was two weeks from its inception. Tyler did not testify about the term of the loan, but said that at the time Hampton took the car from his house in April, Hampton told him that he could get his car back if he repaid the money. Tyler did not testify about what time limit he understood to apply to this agreement. These two witnesses also disagreed about the dates of other events; Hampton said that he came to get the car in March, but Tyler remembered the event happening in April.
Regarding sales with a right of redemption, La. C.C. art. 2567 provides:
The parties to a contract of sale may agree that the seller shall have the right of redemption, which is the right to take back the thing from the buyer.
La. C.C. art. 2569 provides:
A sale with right of redemption is a simulation when the surrounding circumstances show that the true intent of the parties was to make a contract of security. When such is the case, any monies, fruits or other benefit received by the buyer as rent or otherwise may be regarded as interest subject to the usury laws.
*1139 It is significant that Tyler retained possession of the Camry after the sale. La. C.C. art. 2480 provides, "When the thing sold remains in the corporeal possession of the seller the sale is presumed to be a simulation. . . ." Accordingly, given the evidence that Mr. Tyler retained the corporeal possession of the car after the "sale," the sale is presumed to be a simulation. Moreover, La. C.C. art.2027 provides:
A simulation is relative when the parties intend that their contract shall produce effects between them though different from those recited in their contract. A relative simulation produces between the parties the effects they intended if all requirements for those effects have been met.
Although the trial court's findings of fact are subject to review under the manifest error standard, Stobart v. State of Louisiana, through Dep't of Transp. and Development, 92-1328 (La.4/12/93), 617 So.2d 880, we are convinced that the only reasonable interpretation of the evidence is that this transaction was a simulated sale intended to establish a security interest in Hampton's favor for a loan of $225.00. Both parties agreed that Tyler would not have to surrender the car if he repaid the sale price of $225.00, and the auto was likely worth between $1,000.00 (the actual resale "wholesale" price) and $2,450.00, the NADA Guide value. The "sale" was thus intended to serve only as collateral for the loan.
Hampton and Rapid Cash urge in brief that Tyler never raised in the trial court the operation of La. C.C. art. 2567. However, the evidence adduced at trial clearly raised the question of the characterization of this transaction as a conditional sale and, more particularly, a simulation where the true intent was to make a contract of security.
Contracts intended to create security interests have special requirements of form. La. R.S. 10:9-203 provides, in part:
(b) Enforceability. Except as otherwise provided in subsections (c) through (i), a security interest is enforceable against the debtor and third parties with respect to the collateral only if:
(1) value has been given;
(2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and
(3) one of the following conditions is met:
(A) the debtor has authenticated a security agreement that provides a description of the collateral. . . .
Conditions (1) and (2) are satisfied in this case: the secured party paid the loan amount to Tyler, the owner of the car. However, we conclude that condition (3) is not satisfied. The evidence shows that no written security agreement was executed. According to La. R.S. 10:9-102:
(7) "Authenticate" means:
(A) to sign; or
(B) to execute or otherwise adopt a symbol, or encrypt or similarly process a record in whole or in part, with the present intent of the authenticating person to identify the person and adopt or accept a record.
. . . .
(73) "Security agreement" means an agreement that creates or provides for a security interest.
The parties' verbal agreement fails to meet the formal criteria for authentication required by the commercial laws. See also La. C.C. art.1927.
In summary, the intent of the parties to this transaction was not to consummate the sale of the vehicle as recited in the written contract but rather to perfect a *1140 security interest for the loan from Hampton to Tyler. However, because the formal requirements for creating a security interest were not met, the security interest intended to be created never came into being. La. C.C. art.2027. Hence, Hampton had no right to take possession of Tyler's automobile.
The evidence shows that Hampton is no longer in possession of the car. Given the evidence adduced at trial that the value of the car was somewhere between $1,000.00 and $2,450.00 and the fact that the proceeds of the loan to Mr. Tyler were, for various reasons, never returned to Mr. Hampton, we believe that an award of $1,700.00 for the value of the car in favor of Tyler and against Hampton and Rapid Cash is appropriate. Although Rapid Cash was not a listed party to the sale, Hampton had met with Tyler while he was working for Rapid Cash, a Rapid Cash employee referred Tyler to Hampton who was in his capacity as office manager and part-owner of Rapid Cash, and the bill of sale was printed from a Rapid Cash computer.
The trial court was also clearly wrong in rejecting Tyler's unfair trade practices demand. The UTPCPL, La. R.S. 51:1401, et seq., does not enumerate those instances of conduct that constitute unfair trade practices, but La. R.S. 51:1405(A) provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." What constitutes an unfair trade practice is determined on a case-by-case basis. A & W Sheet Metal, Inc. v. Berg Mechanical, Inc., 26,799 (La.App.2d Cir.4/5/95), 653 So.2d 158. In Berg, this court explained:
Conduct is deemed unlawful if it involves fraud, misrepresentation, deception, breach of fiduciary duty, or other unethical conduct. A practice is unfair when it offends established public policy and when the practice is unethical, oppressive, unscrupulous, or substantially injurious to consumers, including business competitors.
Id., 26,779, p. 10, 653 So.2d at 164. Citations omitted.
A private right of action for UTPCPL violations is set forth in La. R.S. 51:1409, which provides, in part:
A. Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual damages. If the court finds the unfair or deceptive method, act or practice was knowingly used, after being put on notice by the director or attorney general, the court shall award three times the actual damages sustained. In the event that damages are awarded under this Section, the court shall award to the person bringing such action reasonable attorney's fees and costs. Upon a finding by the court that an action under this section was groundless and brought in bad faith or for purposes of harassment, the court may award to the defendant reasonable attorney's fees and costs.
B. Upon commencement of any action brought under Subsection A of this section, the plaintiff's attorney shall mail a copy of the petition to the attorney general and director, and, upon entry of any judgment or decree in the action, shall mail a copy of such judgment or decree to the attorney general and director, but failure to conform with this subsection shall not affect any of plaintiff's rights under this section.
*1141 This was not the first time that Hampton has used his position at Rapid Cash to acquire vehicles from clients who do not meet Rapid Cash's loan requirements. He estimated that he enters into such arrangements on an average of five to ten times per month. Hampton's self-help measure of taking possession of Tyler's vehicle and selling it without resorting to judicial process offended public policy and was unethical.[1] We award damages of $1,000.00 to Hampton for the inconvenience and loss of use incurred by him as a result of defendants' actions. Furthermore, we tax reasonable attorney fees of $1,800.00 and costs against defendants.

CONCLUSION
We reverse the judgment of the trial court and award damages of $2,700.00 in favor of Willie James Tyler and against James Hampton and Rapid Cash, LLC. Attorney fees of $1,800.00 and court costs are assessed against James Hampton and Rapid Cash, LLC.
REVERSED.
GASKINS, J., concurs without written reasons.
NOTES
[1] La. R.S. 6:966 allows for the possession and disposition of collateral following default without previous citation and judgment to enforce a security interest evidenced by a security interest or lease. Prior to using this procedure, the secured party is to send notice in writing of the secured party's right to take possession of the collateral without further notice upon default. The notice is to include the language, "Louisiana law permits repossession of motor vehicles upon default without further notice or judicial process."

Hampton and Rapid Cash did not provide this required written notice. Moreover, there was not a properly executed security interest evidenced by a security agreement. Furthermore, it is not clear that Hampton and Rapid Cash are included within the individuals and institutions described in La. R.S. 6:966(C) that are eligible to use these self-help provisions.