MOORE, J.
1,William Autrey and Autrey Investment Properties LLC appeal a judgment finding that they violated the Louisiana Unfair Trade Practices Act (“LUTPA”), La. R.S. 51:1401 et seq., by discontinuing water and sewer service to Tommy Harp’s unoccupied mobile home park lots, and awarding damages of $3,000 and attorney fees of $5,000. Harp answers the appeal, seeking an increase of damages and attorney fees. For the reasons expressed, we reverse the finding of the LUTPA violation and vacate the award of attorney fees, but affirm the damages of $3,000 as reasonable under La. C.C. art.2024.

Factual Background

In 1969, Harp’s mother purchased Lot 14 in Suburban Acres Mobile Home Estates (“the park”) outside of Ruston in Lincoln Parish. Some three years later, she also bought the adjacent Lot 15; in 1978 she placed a mobile home on the lots *1263 and began living there. At some point, the water well dried up and the existing water lines fell into ill repair; no running water was available to Ms. Harp or the other residents of the park. Some began buying their own water or getting it from family and friends; eventually, the Louisiana National Guard placed large tanks of water nearby for the residents’ use. Most of the residents moved out because of the water problems, but Ms. Harp was one of the few to remain.
In 2004, Autrey (with his wife and his LLC) purchased over 20 lots in the park, including the water well and a sewage treatment lagoon. By the time of trial, they had bought 35 of the park’s 45 lots. Autrey repaired the water lines and began providing water and sewer services to the remaining presidents. No written agreement for water and sewer was ever executed, but Autrey sent the following letter to “All residents of Suburban Trailer Park,” with emphasis in original:
WATER
Due to the shift from well water to City water[,] there has been a significant increase in the cost of water. This is due to the city charging double for property located outside the city limits. It is possible that this rate will increase in the near future. These are circumstances beyond my control.
Beginning April 1st the monthly rate for water will be $4.5.00. This is due the 1st and late after the 5th. There will be a $10.00 late fee. Water services will be turned off on the 10th. * * *
It is critical that all water leaks are repaired. This means faucet leaks, drips, running toilets, water heater drains, etc. If you see puddles on the ground when it should be dry[,] this could mean a leak. Please let me know because you will be the one paying for these leaks in the long run. Private property owners can expect a water inspection in the near future. If you have leaks you will be responsible for immediate repairs or will have your water shut off until those repairs are completed[.] Your leak will cost everyone.
SEWAGE •
More bad news concerns the sewage system. Due to requirements by the public health system additional expenses are being incurred to maintain the system. This means that in the near future a sewage fee will be added to the water fee[,] probably in the amount of $20 per month. Again[,] these are additional expenses which are out of my control.
[[Image here]]
Ms. Harp began paying $45 per month for water and sewer service, and did so until she died in July 2008.
After Ms. Harp’s death, Tommy Harp (“Harp”) became owner of an undivided one-third interest in his mother’s property; he later purchased the remaining two-thirds interest for $6,000. Although Harp never lived in the park or had a tenant in the mobile home, he continued to pay the $45 monthly fee for water and sewer.
Is As noted, Autrey owned most of the land surrounding Harp’s two lots. Prior to her death, he had offered to buy her out; afterward, he made several such offers to Harp. At trial, Autrey admitted he wanted to acquire the remaining lots in the park. By late 2008, only one resident remained in the park, a Ms. Prewitt, who also refused to sell her lot to Autrey.
In early or mid-December 2008, Autrey used a backhoe and severed the water line to the park. He testified that he ran a water hose across the street to supply water to Ms. Prewitt until she was able to “relocate and find another place.” He “heard” that the hose froze “one or twice,” *1264 disrupting Ms. Prewitt’s water supply. She eventually moved out of the park.
Harp asked Autrey to restore the water service, but he refused to do so. According to Harp, he met with Autrey, suggesting that they share the expense of repairing the water line, and even offering to obtain water service from Ruston. However, Autrey rejected both options, advising Harp that if he got water elsewhere, he would not be able to use the sewer system.
By letter dated January 26, 2009, Au-trey notified Harp that water services were permanently terminated:
This letter is to inform you that I will no longer be able to provide water services to your lots[.] I have attempted to maintain these services long enough to allow the few residents who were living there to move out. Were it not for your mother living there, I probably would never have attempted to do even that[,] but I am glad that she didn’t have to move[.] * * *
Even though I own most of the lots, the shared cost of maintaining the system is more than I am willing to pay. Should you so desire, my offer to purchase your lots still stands if we can reach a price that is acceptable to both of us.
|4On October 7, 2009, Harp filed this suit for damages against Autrey, his wife and his LLC, alleging that terminating water and sewer services constituted a bad faith breach of the defendants’ obligation to supply those services to the park as well as a violation of LUTPA.[1]
Autrey filed exceptions of no right and no cause of action, urging that Harp had no viable breach of contract claim. He also contended that there was no claim under LUTPA because Harp was neither a business competitor nor a consumer. The court overruled the exceptions.
At trial in August 2011, in addition to the testimony summarized above, two experts testified regarding the value of Harp’s lots. Harp’s expert, Richard Gene Nealy, a licensed real estate broker, testified that the property had a rental value of $500 per month; using the “income approach,” he capitalized the value of the lots, with utilities, at $58,714. Autrey’s expert, Mark S. Taylor, a real estate appraiser, used the “fair market value” approach, projecting a low-end value of $16,800 and a high-end of $39,700 for the lots. Both agreed the property had no income value without water and sewer service. Although nobody had lived in the mobile home since his mother’s death, Harp testified that he had a tenant for it; however, he did not corroborate this by testimony or documentation.

Action of the District Court

By oral reasons rendered in March 2012, the court found that Autrey assumed the responsibility of providing water and sewer service to the subject lot, doing so by sending the letter to the residents, but that he then |fiterminated the water supply without prior warning. Admitting it was a “close call,” the court found a violation of LUTPA: even though Autrey had no obligation to assume the duty of providing water and sewer, he did so. Further, Au-trey’s actions were “egregious,” taken in an effort to acquire the entire park: “There’s no requirement that Mr. Harp or any other person in that subdivision be required to sell their property.” The court also found Autrey in bad faith for failing to provide, despite “many opportunities,” notice of termination of water services. The court conceded that Autrey’s agreement to *1265 provide water was terminable at will, but stated,
The damages in this case flow not from the termination of the contract but from the inappropriate termination of the contract.
Nevertheless, the court declined to award Harp the full appraised value, as this would amount to unjust enrichment. The court awarded $3,000, representing rental for “six months [that] would be more than appropriate and reasonable under the circumstances to have provided notice to Mr. Harp and any other tenant that water service provision was being terminated.”
Finally, the court stated that attorney fees were authorized under LUTPA, R.S. 51:1409 A. By subsequent oral reasons, the court awarded Harp attorney fees of $5,000. As noted, Autrey has appealed and Harp has answered the appeal.

Discussion: LUTPA Violation

By his first assignment of error, Autrey urges the court erred in finding liability under LUTPA, La. R.S. 51:1401 et seq. He shows that LUTPA is penal in nature and strictly construed. Coffey v. Peoples Mortgage & Loan of Shreveport, 408 So.2d 1158 (La.App. 2 Cir.1981). He contends that Harp failed to prove either essential element, that Autrejfs conduct offended established public policy, or that his conduct was immoral, unethical, oppressive, unscrupulous and substantially injurious. Id. He also contends that LUTPA permits the exercise of sound business practices, permissible business judgment and appropriate free enterprise. SDT Indus. Inc. v. Leeper, 34,655 (La.App. 2 Cir. 6/22/01), 793 So.2d 327, writ denied, 2001-2558 (La.12/7/01), 803 So.2d 973. He concludes that there was no factual basis for the court to hold, in essence, that he must continue to provide, at his own expense, water services to Harp.
Harp responds that the findings are not plainly wrong. He suggests that virtually every act of Autrey’s was part of a calculated scheme to drive Harp out of the park, that his explanations for terminating water service were pretextual, and that his conduct was in bad faith.
LUTPA declares it unlawful to engage in “unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.” La. R.S. 51:1405 A. LUTPA also authorizes private actions under R.S. 51:1409 A:
Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use of employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual damages. * * * In the event that damages are awarded under this Section, the court shall award to the person bringing such action reasonable attorney fees and costs. * * *
17This section creates a right of action for any person who suffers any ascertainable loss for a violation of the statute. Cheramie Servs. Inc. v. Shell Deepwater Production Inc., 2009-1633 (La.4/23/10), 35 So.3d 1053. Acts constituting unfair or deceptive trade practices are not specifically defined but are determined on a case-by-case basis. Johnson Const. Co. v. Shaffer, 46,999 (La.App. 2 Cir. 2/29/12), 87 So.3d 203; Tyler v. Rapid Cash LLC, 40,-656 (La.App. 2 Cir. 5/17/06), 930 So.2d 1135. The statute applies to any “consumer transaction,” which is defined as “any transaction involving trade or commerce to a natural person, the subject of which transaction is primarily intended for personal, family, or household use.” R.S. 51:1402(3).
*1266 To prevail on a LUTPA claim, the plaintiff must show that the alleged conduct “offends established public policy and * * * is immoral, unethical, oppressive, unscrupulous, or substantially injurious.” Cheramie Servs. v. Shell Deepwater, supra at 10, 35 So.3d at 1059, and citations therein; Coffey v. Peoples Mortgage & Loan, supra. LUTPA is essentially penal in nature and as such is subject to reasonably strict construction. Coffey v. Peoples Mortgage & Loan, supra; Glod v. Baker, 2004-1483 (La.App. 3 Cir. 3/23/05), 899 So.2d 642, writ denied, 2005-1574 (La.1/13/06), 920 So.2d 238. The supreme court recently explained:
LUTPA does not prohibit sound business practices, the exercise of permissible business judgment or appropriate free enterprise transactions. The statute does not forbid a business to do what everyone knows a business must do: make money. * * * Finally, the statute does not provide an alternate remedy for simple breaches of contract. There is a great deal of daylight between a breach of contract claim and the egregious behavior the statute proscribes.
Cheramie Servs. v. Shell Deepwater Production, supra at 11, 35 So.3d at 1053, quoting Turner v. Purina Mills Inc., 989 F.2d 1419, 1422 (5 Cir.1993); Hardy v. Easterling, 47,950 (La.App. 2 Cir. 4/10/13), 113 So.3d 1178; SDT Indus. v. Leeper, supra.
On close review, this record does not support a finding that Autrey’s conduct was immoral, unethical, oppressive, unscrupulous, or substantially injurious. The district court aptly noted that Autrey was under no obligation to provide water services to residents of the park, but he voluntarily assumed this duty, upon the payment of a monthly fee. His letter to all residents warned that rates were subject to “circumstances beyond my control,” that leaky plumbing in individual trailers put strain on the system, and that he would turn off plumbing if repairs were not made. Residents like Ms. Harp were on full notice that the park’s water and sewer system were on tenuous footing. An experienced plumber, Autrey testified without contradiction that in late 2008 he worked a week trying to find a massive leak in the system, but was unsuccessful. Notably, he disconnected the water months after Ms. Harp died and nobody was living in the mobile home. While the district court diplomatically referred to this as a “close call,” we do not see anything immoral, unethical, oppressive, unscrupulous or substantially injurious in disconnecting the water to an unoccupied mobile home. The court’s finding of a LUTPA violation is a manifest abuse of discretion.
Moreover, Autrey’s profit-and-loss statement showed losses of $11,268.26, not including his own time and labor, in trying to repair the Rsystem. He testified without contradiction that he received monthly water bills over $200, reflecting a volume of water usage consistent only with major problems in the system. In light of these losses, and the subsequent written notice to Harp, we find that the decision to disconnect water to the park was the exercise of permissible business judgment. The district court’s finding to the contrary is a manifest abuse of discretion.
Harp strenuously argues that regardless of everything else, Autrey’s conduct was a bald attempt to force him to sell his lots. “After informing Harp that all water and sewage services were being permanently terminated, Autrey offered to buy his lots. It does not get much clearer than this.” (Emphasis in original.) However, the fact of massive water system failure permeates this record, and discontinuing the water services was a reasonable business re *1267 sponse. LUTPA does not prohibit the profit motive. Cheramie Servs. v. Shell Deepwater Production, supra. Moreover, after cutting off the water, Autrey did not purchase any additional lots. Autrey’s admitted ambition to acquire the entire park did not transform his justifiable conduct into unfair trade practices. The finding of a LUTPA violation is reversed.

Contract Termination and Damages

By his second assignment of error, Au-trey urges the court erred in finding he improperly terminated water services to Harp; by his third assignment, he urges the court erred in awarding $8,000 in damages. He argues that in lieu of LUTPA, the proper measure of damages is La. C.C. art.2024, under which a contract of unspecified duration may be terminated at the will of either party by giving notice, reasonable in time and form, to l1flthe other party. He suggests that because Harp still owns the lots and failed to prove any actual loss of rental, no damages are due.
By answer to appeal, Harp contends the court erred in not accepting the expert opinion of his real estate broker, Nealy, who set the loss at $49,714, or at least accepting the expert opinion of Autrey’s expert real estate appraiser, Taylor, who set the loss at $22,900.
For the reasons already discussed, the finding of a LUTPA violation was manifestly erroneous; hence, R.S. 51:1409 A cannot form the basis for damages. We agree with Autrey’s contention that the proper measure of damages is La. C.C. art.2024:
A contract of unspecified duration may be terminated at the will of either party by giving notice, reasonable in time and form, to the other party.
Notice of modification of a contract that is reasonable in time and form is a basic right of any party. Stegall v. Orr Motors of Little Rock Inc., 48,241 (La.App. 2 Cir. 6/26/13), 121 So.3d 684, 2013 WL 3197448. Notice of termination of a contract must be in good faith. La. C.C. art. 1770; Volentine v. Raeford Farms of La., 48,219 (La.App. 2 Cir. 7/24/13), 121 So.3d 742, 2013 WL 3816430. Damages arising from a contract are measured by the loss sustained by the obligee and the profit of which he has been deprived. La. C.C. art.1995. When damages are insusceptible of precise measurement, much discretion shall be left to the court for the reasonable assessment of these damages. La. C.C. art.1999. The trial court has great discretion to accept or reject expert testimony. Hamel’s Farm LLC v. Muslow, 43,475 (La.App. 2 Cir. 8/13/08), 988 So.2d 882, writ denied, 2008-2431 (La.1/30/09), 999 So.2d 754. In | nfact, the court may even substitute its own common sense and judgment for that of an expert witness when the evidence as a whole warrants such a substitution. Lake D’Arbonne Properties LLC v. Digco Utility Const. Inc., 41,671 (LaApp. 2 Cir. 1/31/07), 949 So.2d 590, and citations therein.
Before the letter to all residents, Autrey had no obligation to provide water and sewer services to residents of the park. That letter, however, constituted a contract to provide these services, subject to “circumstances beyond my control” and the warning that he would terminate services in the event of a major leak. After extensive work to repair the system in late 2008, Autrey severed the water line, cutting off service to Harp’s mobile home. The district court properly found that Au-trey provided no advance notice of this action. This breached his duty of providing notice, reasonable in time and form, of his intent to terminate the contract. Damages are appropriate under C.C. art.2024.
After careful review, we find no abuse of discretion in the award of dam *1268 ages. The court was entitled to find that a proper notice of termination, reasonable in time and form under Art.2024, would have given Harp six months’ notice. Both experts agreed that the mobile home had a rental value of $500 a month. This justifies the award of $8,000 damages.
We find no merit in Harp’s claim for additional damages. The district court apparently felt that both experts’ projections of capitalized losses, ranging from $16,800 to $58,714, were based on untenable assumptions. Notably, Harp did not show that he could lease the 35-year-old mobile home on a long-term, continuous basis; aside from his own self-serving testimony, h?he offered no evidence that he had even attempted to lease it. Also, Harp had previously paid his relatives $6,000 to buy out their two-third interest in the lots, suggesting a fair value of $9,000; the experts’ projected loss of use— not loss of the property itself — amounting to nearly five times that amount borders on the absurd. The district court was completely within its discretion to reject the experts’ estimates and to substitute its own common-sense approach to Harp’s loss.
These assignments of error lack merit.

Attorney Fees

By his third assignment of error, Autrey contests the award of $5,000 in attorney fees; by his answer to appeal, Harp seeks an increase in attorney fees to $10,890, with additional fees for defending this appeal.
Attorney fees are not allowed except where authorized by contract or statute. State v. Wagner, 2010-0050 (La.5/28/10), 38 So.3d 240; Hollenshead Oil & Gas LLC v. Gemini Explorations Inc., 45,389 (La.App. 2 Cir. 7/21/10), 44 So.3d 809, writ denied, 2010-2046 (La.11/12/10), 49 So.3d 892.
For the reasons already expressed, we have reversed the finding of a LUTPA violation; thus, the attorney fee provision of R.S. 51:1409 A does not apply. Autrey’s letter to all residents, which constituted the agreement between the parties, made no provision for attorney fees, and Harp has shown no other contract or agreement addressing the subject. The award of the attorney fee is not supported by statute or contract; it will be reversed. This assignment of error has merit.

113Conclusion

For the reasons expressed, we reverse the finding of a LUTPA violation and vacate the award of attorney fees. However, we affirm the award of damages of $3,000 as reasonable under La. C.C. art.2024. All costs, trial and appellate, are assessed 50% to Autrey and 50% to Harp.
REVERSED IN PART, AFFIRMED IN PART.
WILLIAMS, J., dissents with written reasons.
DREW, J., dissents for the reasons assigned by Judge WILLIAMS.

. Ms. Autrey was later dismissed as a defendant by joint stipulation.