LOBRANO, J., DISSENTS AND ASSIGNS REASONS. hi respectfully dissent. I disagree with the majority’s reversal of all late fees and conventional interest. I would amend the lower court’s judgment to reflect an award of $1,032.00 in late fees and $4,977.75 in conventional interest and affirm as amended. I would also vacate the lower court’s ruling on attorney’s fees and remand for a determination of court costs and attorney’s fees consistent with my dissent. This appeal arises from a homeowners’ association assessment dispute between ETPOA and Contogouris, which is governed by the Louisiana Homeowners Association Act as set forth in La. R.S. 9:1141.1, et seq. Louisiana Revised Statute 9:1141.8 provides that “community documents of residential planned communities shall have the force of law between the homeowners association and the individual lot owners and as between individual lot owners. The remedies for breach of any obligation imposed on lot owners or the association shall include damages, injunctions, or such other remedies as are provided by law.” The community documents relevant to this appeal are the Declaration of Covenants, Conditions and Restrictions (the “covenants”). The covenants provide for semiannual assessments to be paid by the homeowner (here, Contogouris) to ET-POA. | gCommunity documents, such as the ETPOA covenants, are subject to the rules of the civil code and principles of contract interpretation contained therein. Fairway Estates Homeowners Ass’n, Inc. v. Jordan, 2008-0949, p. 10 (La. App. 4 Cir. 5/20/09), 15 So.3d 1011, 1017 (citing Williams v. Southern Trace Property Owners Ass’n, Inc., 43,186, p. 3 (La. App. 2 Cir. 4/23/08), 981 So.2d 196, 198). “Contracts have the effect of law between the parties, and the courts are bound to interpret them according to the common intent of the parties.” 6126, L.L.C. v. Strauss, 2013-0853, p. 12 (La. App. 4 Cir. 12/4/13), 131 So.3d 92, 100-01 (citing La. C.C. arts. 1983 and 2045). “When a contract is not ambiguous or does not lead to absurd consequences, it will be enforced as written and its interpretation is a question of law for a court to decide.” 6126, L.L.C., 2013-0853 at p. 13,131 So.3d at 1001. Turning first to the award of late fees, ETPOA argues on appeal that it should be awarded $1,032.00 in late fees, which is ten percent (10%) of the outstanding assessments of $10,320.00. I agree. For the reasons explained below, I dissent from the majority’s reversal of all late fees. I find that the lower court properly concluded that ETPOA was entitled to a late fee; however, the lower court erred in awarding a reduced amount of late fees. Section 9.08 of the ETPOA covenants provides for late fees and conventional interest relative to unpaid assessments, as follows: 9.08 Effect of Nonpayment; Remedies of the Association.- Any assessments of an owner.., which.are not paid when due shall be delinquent. Any assessment delinquent for a period of more than ten (10) days after, the date when due shall incur a late charge in an amount as may be determined by the Board from time to time and shall also commence to accrue simple interest at the maximum rate of eighteen (18%) percent per an-num, but in no event to exceed the maximum rate authorized by Louisiana law: ETPOA introduced into evidence at trial Minutes of the Board of Directors Meeting of the English Turn Property Owners’ Association, ’ dated December 11, 2002. These minutes contained a resolution (the “2002 resolution”) providing as follows: All accounts not paid by the end of the first month are considered delinquent and a Past Due Notice with a copy of the account will be mailed to- the property owner. All delinquent accounts will be assessed' a (10%) late fee for the current period and each previous past delinquent assessment, and will commence to accrue simple interest at the rate of eighteen (18%) per annum. I find that the 10% late fee was set forth in. clear, unambiguous language and is. enforceable as written. Section 9.08 of the covenants explicitly provided the ETPOA Board with the authority to determine the amount of a late fee “from time to time.” Under La. C.C. art. 1971, “[p]arties are free to contract for any object that is lawful, possible, and determined or determinable.” “If the determination of the quantity of the object has been left to the discretion of a third person, the quantity of an object is determinable.” La. C.C. art. 1974. ETPOA and Contogouris contracted that the amount of the late fee may be determined by the ETPOA Board, as permitted by La. C.C. art. 1974. . The majority acknowledges that the 10% late fee was set forth in the 2002 resolution, but finds that ETPOA is nevertheless not entitled to late fees. The majority cites to English Turn Prop. Owner’s Ass’n, Inc. v. Short, 2016-0460, p. 16 (La. App. 4 Cir. 11/30/16), 204 So.3d 672, 683, reh’g denied (12/14/16) for the proposition that “[without the 2002 Resolution, Section 9.08 of the covenants is vague and does not contain a definitive method by which late charges are to be detennined.” The majority also protests that “there was.no evidence that the 2002 Resolution was ever made part of the covenants or transmitted to the homeowners as an amendment and integral part of the covenants.,.” I disagree with these findings. This case is distinguishable from Short on the issue of late fees because, in Short, the 2002 resolution was not offered into evidence at trial. 2016-0460 at p. 16, 204 So.3d at 683. In the matter currently on appeal, however, it is clear from the record that the 2002 resolution was introduced as an exhibit at trial. The 2002 resolution is evidence that the ETPOA Board determined the amount of the late fee at its December 11, 2002 meeting. The majority fails to explain with law or record evidence how the 2002 resolution could have been “made part of the covenants” or what ET-POA failed to do in this respect. The majority cites to no law and I find none that prohibits a late fee that may be re-determined periodically by a governing board of homeowners in the. manner, done in this case. Rather, this Court has permitted imposition of a late fee in similar circumstances. In Eastover Prop. Owner’s Ass’n, Inc. v. Cochrane, 2002-1502, pp. 5-6 (La. App. 4 Cir. 5/21/03), 848 So.2d 710, 713, this. Court upheld a late fee not specified in the community documents where those community documents gave the board the “authority to do any other things that, in their opinion, will promote the common benefit and enjoyment of the residents of the subdivision” finding that the late fee was “necessitated because a short fall in the collection of the quarterly assessments would directly impact all of the property owners in the subdivision because services would have to be reduced or eliminated.” The majority cites to Harp v. Autrey, 47,749 (La. App. 2 Cir. 8/21/13), 121 So.3d 1260 for the proposition that a party has a right to reasonable notice of modification of a contract. Harp is distinguishable, as that casé involved termination of a contract without notice. A lot owner of a mobile home community sent a letter to residents in which the owner assumed a duty to provide water 'and sewer services, and then severed those services without notifying the residents. Id., 47,749 at p. 11, 121 So.3d at 1267. Here, no contract was terminated or modified; the ETPOA Board determined the amount of the late fee in accordance with the authority provided to the Board by the ETPOA covenants. | ^Moreover, whether the homeowners had notice of the 2002 resolution was not an issue litigated at trial, and this Court lacks authority to review facts that were never before the lower court. The lower court awarded late fees, albeit at a reduced rate, such that it is evident that the lower court found late fees proper under the covenants. The parties did not introduce evidence regarding notice or lack of notice of thé 2002 resolution, and no such evidence forms a part of the record on appeal. “A court of appeal is a court of review. It is limited' in its review to the evidence submitted and entered into the record at the trial court level.” Lorbeck v. Lorbeck, 99-1257, p. 5 (La. App. 4 Cir. 5/23/01), 789 So.2d 656, 659 (citing Uniform Rules, Courts of Appeal, Rule 1-3). As the parties did not submit evidence of notice to thhomeowners at trial, this issue is beyond the scope of this Court’s appellate review. • I find merit to ETPOA’s assignment of error as to late fees. I find that the lower court erred as a matter of law in awarding a reduced amount of $500.00 in late fees, based on its finding that ETPOA’s bookkeeping practices were substandard and the length of time it took ETPOA to bring its suit to collect the unpaid assessments and deposit certain checks tendered by Contogouris. I find no law that supports the method of reducing late fees set forth in the lower court’s judgment. - - Contogouris suggests that La. C.C. art! 2003 operates to reduce late fees due to ETPOA’s negligence,, arguing that this article supports the lower court’s decision to award late fees at. a reduced rate." La. C.C. art. 2003 provides as follows: An obligee may not recover damages when his own bad faith has caused the obligor’s failure , to perform pr when, at the time of the contract, he has concealed from the obligor facts that he knew or should have known would cause a failure. ■ ■If the obligee’s negligence contributes to the obligor’s failure to perform, the damages are reduced in proportion to that negligence. |RI find that La. C.C. art. 2003 does not apply to the facts of this case. Under Contogouris’ argument, failure to perform is failure'to pay semiannual homeowners’ assessments timely. The record evidence does not show that the' obligee, ETPOA; caused the obligor,' Contogouris, to fail to pay semiannual assessments timely or that ETPOA concealed facts that ETPOA knew or should have known would cause Conto-gouris to fail to pay her semiannual assessments timely. There is no evidence that any purportedly negligent collection efforts by ETPOA, which took place years after outstanding assessments were due, contributed to those assessments not being paid in the first place. ETPOA’s after-the-fact collection efforts are irrelevant to Contogouris’ ability' to pay assessments when they became due under the ETPOA covenants. . Louisiana Civil Code article 2003 should not operate to reduce late fees otherwise due under contract in the case before this Court, especially where Contogouris paid the underlying assessments on the last day of trial, without objection.' The lower court erred as a matter of. law in reducing the late fee award based on the court’s perception that collection practices took too long. .1 would therefore amend the portion of the lower court’s judgment regarding late fees to reflect an award of $1,032.00 in late fees to ETPOA and affirm as amended. Addressing .the issue of conventional interest, I agree with ETPOA’s argument that it should be awarded $4,977.75 in conventional interest, which is twelve percent (12%) of the $10,320.00 homeowners’ associate -assessment in' dispute. Twelve percent is the maximum conventional interest rate provided under La. R.S. 9:3500(C)(1) at all pertinent times. I find that the lower court correctly concluded that ETPOA was entitled to conventional interest pursuant to the ETPOA covenants. Nevertheless, for the reasons discussed above regarding late 17fees, I find that the lower court erred as a matter of law in awarding a reduced amount of $800.00 in conventional interest. I do not find that La. C.C. art. 2003 applies or provides a basis to reduce conventional interest under the facts on appeal. Section 9.08 of the covenants provides a maximum cap on the conventional interest rate, that “[a]ny assessment delinquent for a period of more than ten (10) days after the date when due shall ... commence to accrue simple interest at the maximum rate of eighteen (18%) percent per annum, but in no event to exceed .the maximum rate authorized by Louisiana law.” Stated another way, Section 9.08 fixes the conventional interest rate at the lesser, of 18% or the maximum interest rate permitted by Louisiana law. I disagree with the majority’s reversal of the.entire conventional interest award. The majority takes issue with the 2002 resolution, in which the ETPOA Board adopted an 18% conventional interest rate on delinquent assessments. The majority finds (1) that there was no evidence that the 2002 resolution was “made a part of the covenants or transmitted to the homeowners”; (2) that the conventional interest rate was not fixed in writing as described in Short, 2016-0460 at p. 14, 204 So.3d at 682; and (3) that the 18% interest rate exceeded the statutory maximum conventional interest rate of twelve percent (12%). As. discussed above, the issue of notice to the homeowners of the 2002 resolution was not litigated at trial and is beyond the scope of this Court’s appellate review, as no evidence was introduced into the record on this issue. See Lorbeck, 99-1257 at p. 5, 789 So.2d at 659; Uniform Rules, Courts of Appeal, Rule 1-3. The majority also does not explain with any law or record evidence how the 2002 resolution could have been “made a part of the covenants” or what ETPOA failed to do to accomplish those ends. I find, however, that the 2002 resolution does not govern the conventional interest rate. The ETPOA covenants do not give |Rthe ET-POA Board the authority to change the interest rate by enacting a resolution. In fact, ETPOA never tried to enforce the 18% interest rate in the 2002 resolution with respect to Contogouris and charged a 12% interest rate pursuant to the covenants. Under Section 9.08 of the covenants, the Board may determine the amount of a “late charge” “from time to time” but- the covenants do not state that the Board can change the interest rate. I disagree with Short and the majority’s interpretation of Short to the extent that Section 9.08 is misquoted and the opinion concludes that Section 9.08 provides a “range for the interest rate.” 2016-0460 at p. 13, 204 So.3d at 681. Instead, Section 9.08 of the covenants unambiguously provides a cap on the conventional interest rate, the lesser of 18% or the maximum rate allowed by Louisiana law. Louisiana Revised Statute 9:3500(0(1) requires that the conventional interest rate must be “fixed in writing.” I find this requirement was satisfied. In addition, I do not find that conventional interest was forfeited under La. R.S. 9:3501 because there is no evidence that ETPOA collected or attempted to collect usurious conventional interest in excess of the maximum rate of 12%. Rather, the trial record is clear and none of the litigants disputed that ETPOA only sought to collect 12% conventional interest and did not actually collect conventional interest in excess of 12%. The Louisiana Supreme Court has found that, where a note contained an interest rate in excess of the statutory maximum, but the note holder did not collect or intend to collect the interest over the maximum rate, the interest collected should not be forfeited. See Huddleston v. Bossier Bank & Tr. Co., 475 So.2d 1082, 1084-85 (La. 1985). Here, the conventional interest rate is further limited because Section 9.08 provides that such interest rate is “in no event to exceed the maximum rate authorized by Louisiana law.” I do not find that La. R.S. 9:3501 applies to the facts of this case. Thus, I would amend -the lower court’s judgment to reflect an award of $4,977.75 in conventional interest and affirm as amended. For the reasons stated herein, I would also vacate the lower court’s ruling on attorney’s fees and remand for a determination of court costs and attorney’s fees consistent with my dissent..