PITMAN, J.
| TDefendant, Orr Motors of Little Rock, Inc., d/b/a Sparks Nissan Kia Real Estate, LLC, appeals a judgment from the Monroe City Court awarding Plaintiff, Jefferey K. Stegall, back wages in the amount of $30,000, penalty wages for 90 days at his daily pay rate totaling $25,439, attorney fees in the amount of $15,000 and legal interest on all said amounts. For the following reasons, we amend the judgment to reduce the amount of the penalty wages award to $10,226.70 and to reduce the amount of the attorney fees award to $10,861.21, and affirm the judgment in all other respects.

FACTS

Defendant is the owner of the Sparks Nissan Kia dealership (“Sparks”) in Monroe, Louisiana, where Plaintiff was hired in January 2005 as the service manager. At the time of his hire, Plaintiff was presented with a “pay plan” which detailed the manner in which his salary would be calculated. The pay plan contained no elements other than salary calculation and did not provide for a term of employment. The pay plan was in writing and signed by both parties. The parties agree that Plaintiff was an at-will employee.
A few months later, in July 2005, Plaintiff was given the additional job of serving as parts manager. Sparks modified Plaintiffs pay plan to include a percentage of the parts department’s gross profit to be paid to Plaintiff. This modification was reduced to writing and signed by both parties.
Plaintiffs January and July 2005 pay plans regained in effect for several years with only occasional bonuses or incentives. Incentive^ and | ^bonuses are common practice for /ar dealerships to help motivate employees. Plaintiff admitted at trial that he would- have felt entitled to any bonus offered'¡without a formal, signed agreement between the parties. A bonus offer by email was common practice.
In September 2007, Plaintiff approached William,Sparks, the owner of Sparks, and requested that one of the service technicians aij Sparks, Keith Branch, be granted a guaránteed weekly salary, rather than a typical ¡salary based on the profits of the service: department. Mr. Sparks sent Plaintiff an email agreeing to the guaranteed weekly salary, but with the understanding that it was Plaintiffs responsibility to make sure that Mr. Branch produced enough work to cover the base salary.
Mr. Branch did not produce the required: amount of work to cover his guaranteed salary and Plaintiff did not fire or replace him, resulting in a loss of profits for the Sparks service department. Sparks held Plaintiff responsible and deducted the loss from his wages beginning in September 2007.
In August 2008, the service department accepted a car for service without confirming that the repairs would be covered by warranty. The warranty on the car had expired because of a previous accident. *687 The ear was serviced and returned to the owner without verifying warranty coverage, which cost Sparks more than $5,300. Sparks deducted this loss from Plaintiffs wages, attributing the loss to his own neglect.
Plaintiff testified that he was not directly responsible for the warranty problem that cost the dealership over $5,300. He did not write the job ticket |sand cannot be held responsible for every mistake made by the 16-18 employees under his supervision. Mr. Sparks testified at trial that holding the service manager responsible for unpaid customer bills was industry practice, but Plaintiffs testimony contradicted that. At the time of the incident, Plaintiff testified that he was informed he could either pay for the loss or he could resign. Plaintiff agreed that Sparks could deduct $500 from each of his paychecks to cover the loss from the warranty issue. Sparks was not consistent in its withdrawal of the money, sometimes taking more than was agreed upon.
Plaintiff was made aware, in September 2008, via email from Mr. Sparks, that the profit margins for the parts and service departments were low in comparison to other dealerships. Mr. Sparks set sales requirements for the parts department and advised that failing to meet the requirements would result in a one percent deduction in commissions from the parts department.
Sparks unilaterally modified Plaintiffs pay plan in writing in January 2009, but it was unsigned by the parties. The new pay plan removed Plaintiffs base salary provision and set out that his compensation would be based solely on commissions from exceeding net profit goals, as well as the opportunity to earn other commissions based on certain benchmark sales numbers. Although Plaintiff continued working at Sparks under the modified pay plan, he was dissatisfied with the modifications and resigned on June 30, 2009.
14Plaintiff filed suit in Monroe City Court seeking unpaid wages, attorney fees and penalties. Since the litigation was filed in city court, Plaintiff reduced his claim to $30,000 to stay within the court’s jurisdictional limits. During the bench trial, Plaintiff, Mr. Sparks and Judy Bradford, Sparks’ office manager, testified. Due to Ms. Bradford’s medical condition and her inability to appear at trial, the court allowed her deposition transcript to be admitted as testimony. The testimony of Plaintiff and Mr. Sparks was contradictory, with Plaintiff describing the deductions from his paycheck being made arbitrarily and unilaterally. The trial court entered a judgment in favor of Plaintiff awarding him back wages in the amount of $30,000,[1] penalty wages for 90 days at his daily pay rate totaling $25,439, attorney fees in the amount of $15,000 and legal interest on all amounts granted.

DISCUSSION

Modifications to Plaintiff’s pay plan

In its first assignment of error, Defendant argues that it established at trial that valid modifications were made to Plaintiffs compensation plan and that Plaintiff did not sufficiently establish that additional wages were due upon his resignation from Sparks. At trial, Plaintiff argued that his salary from September 2007 through June 2009 was not paid in accordance with the July 2005 pay plan. Defendant contends that sufficient notice was given to Plaintiff *688 before every modification was made and Plaintiff failed to Rmake any objections to the modifications and continued to accept and negotiate his paychecks during that time. Defendant states that evidence of the modifications was presented at trial and that modifications such as those made by Sparks are recognized under Louisiana law. Defendant further contends that Plaintiff does not disagree that pay plans can be modified by Sparks, only that he did not believe his plan would be modified in a negative way.
Defendant also argues that Sparks is free to modify its employees’ pay plans and that modifications are frequently made in order to increase productivity and sales. Defendant states that a written contract can be modified by oral contracts and by the conduct of the parties. Defendant further states that Plaintiffs continuing to work at Sparks and to accept paychecks despite modifications in his pay plan amount to his consent to the changes.
The parties agree that Plaintiff was an at-will employee; however, Plaintiff asserts that status comes with various contractual and statutory rights, including:
1) The employer must notify the employee “at the time of hire” of the rate at which he would be paid for his services. Once the employee has performed services, the employee is entitled to be paid at the agreed-upon rate. La. R.S. 23:633(A).
2) The employer has a legal obligation to provide the employee with “notice, reasonable in time and form” if the employer desired to terminate or modify the contract. La. C.C. art.2024.
3) The employer’s right to deduct amounts from the employee’s paycheck is limited by La. R.S. 23:635, which prohibits an employer from deducting amounts from an employee’s paycheck as a penalty for perceived errors or policy violations by the employee.
| fiPlaintiff asserts that characterizing an employee as “at will” does not dispose of an employee’s claims for breach of the employment contract or violation of the employee’s statutory rights. Plaintiff further asserts that Sparks violated his legal rights at various times throughout his employment.
An appellate court may not set aside a trial court’s or jury’s findings of fact in absence of manifest error or unless it is clearly wrong. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989).
It is undisputed that the parties entered into a written contract of employment in July 2005, which set forth the terms of Plaintiffs pay plan. The pay plan, introduced into evidence at trial, provided that Plaintiff was guaranteed a base salary of $2,500 per month and that he would receive a percentage of the gross profits of the service and parts departments. Defendant did not introduce any document evidencing a subsequent written agreement signed by the parties to establish any change in those terms. Thus, it had the burden of proving an oral modification to Plaintiffs compensation plan. Kern v. River City Ford, Inc., 98-0407 (La.App. 1st Cir.2/19/99), 754 So.2d 978.
Notice of modification of a contract that is reasonable in time and form is a basic right of any party. La. C.C. art. 2024. The burden of proving an alteration in the terms of a written employment agreement lies with the party alleging the change. Scallan v. Mark Petroleum Corp., 303 So.2d 498 (La.App. 2d Cir.1974), writ denied, 307 So.2d 370 (La.1975). Here, that burden was with Defendant. The trial court weighed the [7evidence and testimony and did not believe that Defen *689 dant met its burden of proving a modification of the contract.
The trial court heard the conflicting testimony of the Plaintiff and Mr. Sparks and determined that Plaintiffs testimony was more credible. The trial court chose to believe Plaintiffs testimony that pay plans in his line of work are reduced to writing and any modifications should be handled in the same manner. Sparks applied modifications unilaterally, sometimes without notice and not in a formal, written contract. The January 2009 pay plan was unsigned by the parties and the trial court therefore found that the July 2005 pay plan should remain the controlling document. The finding by the trial court that Sparks improperly modified Plaintiffs pay plan was not manifestly erroneous or clearly wrong. Without a finding of manifest error by the trial court, this assignment of error is without merit.

Back wages

In its second and third assignments of error, Defendant argues that no back wages were due to Plaintiff and that any deductions taken from his paycheck were not for fines, but for his negligence, a common industry practice. Defendant argues in the alternative that, if it is determined that Plaintiff is owed back wages, the trial court’s calculation of those wages is incorrect.
Defendant argues that, as Plaintiffs pay plans were appropriately modified, no back wages were due to Plaintiff. Plaintiff was paid regularly and he accepted and negotiated his paychecks without complaint.
|sThe trial court did not set forth any specific calculation to determine the back wages and reimbursement of any improper deductions owed to Plaintiff. Defendant asserts that the trial court’s calculations fail to account for any wages that were actually paid to Plaintiff during his employment term. Defendant continues to point out that Plaintiff wishes to be paid under the July 2005 pay plan, but the calculations did not take into account any extra commissions Plaintiff was paid that were not included in the original plan.
Plaintiff counters with the argument that an employee is entitled to know the rate of pay applicable to his services. Sparks did not notify Plaintiff of his pay rate change before he began work in September 2007. Plaintiff argues that he had a right to be informed, with reasonable notice, before any modifications to his employment contract were applied. Plaintiff submits that, after 20 years in the automotive service business, he has found that pay plans are always reduced to writing— oral modifications are rare and are offered only when the dealership intends to increase rather than reduce the manager’s pay. This point was corroborated by Ms. Bradford’s deposition testimony.
Plaintiff argues that he never agreed or expected to be held responsible for other employees’ unpaid bills or mistakes. Neither of his pay plans mentions such a responsibility and it is not noted in Sparks’ employee handbook. While Mr. Sparks testified at trial that “backflagging” is common practice in dealerships, Plaintiff asserts that the practice amounts |flto a fine, which is prohibited by Louisiana law, is against public policy and is never acceptable.
If reasonable notice is not given, then the existing contract remains in force and continues to govern the parties’ relationship. Harrison v. CD Consulting, Inc., 05-1087 (La.App.lst Cir.5/5/06), 934 So.2d 166. The court in Harrison determined that an existing contract remains in effect until proper notice is given. Based on Harrison, the only way Defendant could terminate or modify the contract was *690 by giving reasonable notice, and, without this, the July 2005 pay plan remained in effect. The unilateral decisions of Defendant after Plaintiff had provided work are not sufficient notice to be considered a modification of Plaintiff’s pay plan.
The unilateral changes made to Plaintiffs pay plan were improper and Plaintiff is owed wages in accordance with the July 2005 pay plan. Any payment that was made to Plaintiff which is less than what he was owed under that pay plan was improper and should be repaid.
According to La. R.S. 23:631(A)(l)(a), it is the duty of the employer to pay the employee the amount then due under the terms of employment no later than 15 days after the employment ends.
The trial court also determined that the deductions taken from Plaintiff for various things, including the mistake of warranty coverage and failure of Mr. Branch to produce enough work to cover his guaranteed salary, are actually fines and are prohibited by Louisiana law. An employer may not legally require an employee to pay a “fine” in the form of a financial penalty for an error or perceived breach of the employer’s work 11nrules or policies. Since “fines” are against public policy, the employer may not deduct a “fine” even if the employee consents to the deduction. La. R.S. 23:635; Brown v. Navarre Chevrolet, Inc., 91-1133 (La.App. 3d Cir.12/9/92), 610 So.2d 165. Despite the testimony that deductions such as these are standard within the industry, we agree that these deductions from Plaintiffs paychecks are “fines” under La. R.S. 23:635 and must be repaid.
Based on the foregoing, we find that the trial court did not commit manifest error in its determination that Plaintiff is owed back wages as calculated by the trial court and reimbursement for any and all fines improperly deducted during his employment. This assignment of error is without merit.

Penalty wages

Defendant’s fourth assignment of error argues that the trial court erred in determining that Plaintiff is entitled to penalty wages, or, in the alternative, that the calculation of the penalty wages is excessive.
To recover penalty wages under La. R.S. 23:632, the employee must prove: 1) that wages were due and owing, 2) a demand for payment was made at the place where the employee was usually paid and 3) the employer failed to pay upon demand. La. R.S. 23:632; Schuyten v. Superior Systems, Inc., 05-2358 (La. App.1st Cir.12/28/06), 952 So.2d 98. As this statute is penal in nature, it must be strictly construed. Moore v. Fleming Subway Restaurants, 28,543 (La.App.2d Cir.8/21/96), 680 So.2d 78. In order for an employee to recover penalty wages, the employer must be found to have acted in an arbitrary or unreasonable manner. If the amount owed to the |nempIoyee is subject to a bona fide dispute, courts will not consider the failure to pay as arbitrary or unreasonable and will refuse to award penalties.
In Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), the supreme court clarified the standard of review in instances in which an appellate court questions the adequacy of the trial court’s monetary award. See also Farmer v. Patrician SLP, L.L.C., 43,601 (La.App.2d Cir.10/1/08), 997 So.2d 578, writ denied, 08-2606 (La.1/9/09), 998 So.2d 724, and writ denied, 08-2613 (La.1/9/09), 998 So.2d 725. When an appellate court finds that the lower court abused this discretion, the appellate court may only raise or lower the award to the highest or lowest point which *691 is reasonably within the discretion of that court.
Based on the evidence and the law as set out in La. R.S. 23:632, Plaintiff is entitled to 90 days of penalty wages. However, we believe that the trial court’s calculation of penalty wages is excessive and not supported by the record. This court has recalculated those penalty wages using Plaintiffs daily pay rate under the controlling July 2005 pay plan. Plaintiffs base salary in July 2005 was $2,500 a month, which this court then divided by a 22-working day average to establish a daily rate of $113.63. The daily rate of $113.63, multiplied by 90 days, as granted by statute, brings the penalty wage award amount to $10,226.70. No commissions were included in the calculation, as commissions are not generally utilized in determining the employee’s daily rate of pay for calculating penalty wages. Schuyten v. Superior Systems, Inc., supra; Potvin v. Wright's Sound Gallery, 568 So.2d 623 (La.App. 2d Cir.1990); Hess v. Pembo, 422 So.2d 503 (La.App. 4th Cir.1982). We find that the trial court committed manifest error in awarding penalty wages in the amount of $25,439 and reduce that award to $10,226.70.

Attorney fees

Defendant asserts in its final assignment of error that the trial court erred in awarding attorney fees to Plaintiff, claiming that it did not improperly withhold wages at the time of Plaintiffs resignation.
Plaintiff argues that Plaintiffs counsel handled the case on a contingency basis and, therefore, did not keep contemporaneous hourly records. At the conclusion of the trial, Plaintiffs counsel prepared a rough estimate of the time expended on the case by reviewing the file. There were numerous pretrial issues, discovery requests, depositions, pleadings, court hearings, writ applications, arguments and a two-day bench trial. Plaintiff claims that an award of $15,000 is reasonable in light of the work required to properly present the case. Plaintiff also points out that the attorney fees are actually only 27 percent of the total award, which includes the back wages and penalty wages.
La. R.S. 23:632 provides that “reasonable attorney fees” shall be awarded to Plaintiff in the event the court finds a just suit has been filed by Plaintiff. Plaintiffs counsel submitted a report of hours spent on Plaintiffs case; but, after a reduction of the penalty fee award, we find the attorney fee award to be excessive.
11sThis court does not agree completely with the contents of the billing time line that was produced by Plaintiffs attorney. Some menial tasks were clearly over-billed; but, based on the record, this matter did require a generous amount of work and the attorney should be justly and fairly compensated for his labors. As stated above, La. R.S. 23:632 provides for an award of attorney fees under these circumstances. We find, however, that the trial court’s calculation of attorney fees is now excessive in light of the reduction in the penalty wages award. Accordingly, the attorney fees have been recalculated using the same percentage (27 percent) of the total award of $40,226.70, which includes back wages and the amended penalty wages. The amended attorney fee award is $10,861.21.

CONCLUSION

For the foregoing reasons, the judgment of the trial court awarding Plaintiff, Jeffrey K. Stegall, back wages in the amount of $30,000 is affirmed. The trial court’s judgment is amended to reflect a reduction in the penalty wages award to Plaintiff to $10,226.70 and a reduction in the attorney fee award to $10,861.21 and, as amended, *692 is affirmed. Costs of this appeal are assessed to Defendant, Orr Motors of Little Rock, d/b/a Sparks Nissan Kia Real Estate, LLC.
AFFIRMED IN PART, AMENDED IN PART AND, AS AMENDED, AFFIRMED.

. The award of back wages collectively includes the back wages owed to Plaintiff and reimbursement of any deductions determined to be "fines” and improperly withheld from Plaintiff's paychecks by Sparks.