SHEA HARRELSON AND JAMES AGEE

VERSUS

UTC LABORATORIES, LLC

NO. 23-CA-64

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 776-917, DIVISION "A"
HONORABLE RAYMOND S. STEIB, JR., JUDGE PRESIDING


November 02, 2023


**SUSAN M. CHEHARDY**
**CHIEF JUDGE**


Panel composed of Judges Susan M. Chehardy,
Jude G. Gravois, and Marc E. Johnson


**AFFIRMED.**
    **SMC**
    **JGG**
    **MEJ**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Morgan Naquin
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
SHEA HARRELSON AND JAMES AGEE
John A. Meade
Adam G. Young
Christopher K. Ralston
James H. Gilbert
Virginia P. Stewart

**CHEHARDY, C.J.**

In this Louisiana Wage Payment Act case, plaintiffs-appellants, Shea Harrelson and James Agee, appeal the trial court's monetary awards to request additional penalty wages, attorneys' fees, and costs. Their former employer, defendant UTC Laboratories, Inc. ("UTC"), terminated their employment in 2015 without cause but did not pay all wages and commissions owed. For the reasons that follow, we affirm the trial court's ruling.

*Facts and Procedural History*

UTC operates a toxicology and DNA testing laboratory and related healthcare businesses. UTC hired plaintiffs as Area Vice Presidents (AVPs) beginning July 1, 2014.[1] Both plaintiffs entered into employment contracts with UTC that specified their wages and their rate of earned commissions. The contracts guaranteed that Harrelson and Agee would be paid commissions based on samples and tests that they were able to generate for UTC, even if their employment were to terminate before one year. The contracts also provided that plaintiffs would receive a base salary of $120,000/year. On April 3, 2015, UTC terminated plaintiffs without cause, and without paying plaintiffs certain earned commissions.

After making numerous demands, plaintiffs filed suit against UTC and other defendants in 2017. On September 16, 2022, after more than five years of litigation, the trial court granted plaintiffs' motion for partial summary judgment, holding UTC liable for breaching plaintiffs' employment agreements and for violating the Louisiana Wage Payment Act, La. R.S. 23:631, *et seq.* (LWPA). Thus, the only remaining issue for trial was quantum—determining the amount of unpaid wages and commissions, penalty wages, attorneys' fees, and costs that were due.

---

[1] Before this date, both plaintiffs and their sales teams worked for UTC as "1099" independent contractors. On July 1, 2014, plaintiffs and their teams became W-2 employees of UTC.

Also on September 16, 2022, the trial court granted UTC's motion for partial summary judgment with regard to penalty wages, holding that recoverable penalty wages were capped at "ninety days wages at the employee's daily rate of pay" pursuant to La. R.S. 23:632, and further holding that plaintiffs' daily rate of pay was to be calculated using plaintiffs' base salary, not their base salary plus commissions and bonuses. After plaintiffs sought supervisory review of the trial court's limitation on the penalty-wage calculations, this Court denied the writ. *Harrelson v. UTC Laboratories, Inc.*, 22-478 (La. App. 5 Cir. 10/19/22) (unpublished writ disposition). The parties then agreed to convert the jury trial to a bench trial and entered joint "Stipulations of Fact" that were filed into the record.

At trial, both plaintiffs testified that as Area Vice Presidents (AVPs), they each brought their own sales team to UTC. UTC was to pay the AVPs monthly commissions amounting to 21% of revenue generated from the samples that the respective AVP's sales teams sent in for processing by the lab, minus the amounts that were to be paid out to the AVP's team members. Ms. Harrelson explained that out of her 21% monthly commission, she would decide what percentage the sales team under her would receive, such as 10% or 15% in commission payments.[2] Plaintiffs also testified that UTC had received payments from two clients/entities, Vantari and Ally, which were not included when UTC figured the commissions paid out to plaintiffs before UTC ceased making payments altogether.

At trial, plaintiffs proffered the amounts they believed they were entitled to receive from UTC, including penalty wages, and the full amount of attorneys' fees and costs that they sought.

---

[2] Before trial, the parties stipulated that Exhibit A of plaintiffs' employment agreements provided that Harrelson and Agee each receive "21% commission monthly less the variable commission payment paid out on a monthly basis" to the AVPs' sales representatives. Plaintiffs confirmed that UTC would pay the sales representatives directly.

After trial, the trial court entered a written judgment that awarded the following amounts in commissions, penalty wages, attorneys' fees, and costs:

> **IT IS ORDERED, ADJUDGED, AND DECREED** that Judgment be rendered in favor of Plaintiffs, Shea Harrelson and James Agee, and against Defendant, UTC Laboratories, LLC, **awarding to Plaintiff, Jay Agee, the total sum of $1,110,373.34**, calculated as follows:
>
> | | |
> |---|---|
> | Unpaid Bonuses/Commissions | $ 377,346.00 |
> | Penalty Wages | $ 30,000.00 |
> | Vantari & Ally Commissions | $ 323,570.00 |
> | Attorneys' Fees | $ 365,458.00 |
> | Costs | $ 13,999.34 |
> | Total | $1,110,373.34 |
>
> together with legal interest from the date of this judgment on the award of $365,458.00 of attorneys' fees and on the award of $13,999.34 of costs, and legal interest from the date of judicial demand of the $377,346.00 of unpaid bonuses/commissions, $30,000.000 [sic] of penalty wages, and $323,570.00 of Vantari and Ally Commission.
>
> **IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Judgment be rendered in favor of Plaintiffs, Shea Harrelson and James Agee, and against Defendant, UTC Laboratories, LLC**, awarding to Plaintiff, Shea Harrelson, the total sum of $2,125,573.35**, calculated as follows:
>
> | | |
> |---|---|
> | Unpaid Bonuses/Commissions | $ 738,840.00 |
> | Penalty Wages | $ 30,000.00 |
> | Vantari & Ally Commissions | $ 638,876.00 |
> | Attorneys' Fees | $ 703,858.00 |
> | Costs | $ 13,999.35 |
> | Total | $2,125,573.35 |
>
> together with legal interest from the date of this judgment on the award of $703,858.00 of attorneys' fees and on the award of $13,999.35 of costs, and legal interest from the date of judicial demand on the $738,840.00 of unpaid bonuses/commissions, $30,000.000 [sic] of penalty wages, and $638,876.00 of Vantari and Ally Commission.

Plaintiffs now seek additional penalty wages, attorneys' fees, and costs.

*Law and Analysis*

Plaintiffs raise three assignments of error. First, they contend that the trial court erred in refusing to include plaintiffs' earned commissions in their "daily rate of pay" for purposes of calculating penalty wages under La. R.S. 23:632. Second, plaintiffs contend that they should be awarded all of the attorneys' fees requested—$1,713,426.50—because UTC never objected to that amount. Third, plaintiffs argue that the award of costs should be increased to $141,113.34.

We review the trial court's award of penalty wages for an abuse of discretion. *Hanks v. Louisiana Companies*, 16-334 (La. App. 3 Cir. 12/14/16), 205 So.3d 1048, 1056-57. Awards of attorneys' fees and costs are also reviewed for an abuse of the trial court's discretion. *Covington v. McNeese State Univ.*, 12-2182 (La. 5/7/13), 118 So.3d 343, 348; *Barre-Williams v. Ware*, 20-665 (La. App. 4 Cir. 4/28/21), 365 So.3d 760, 768. The role of the reviewing court is not to determine what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. *Covington*, 118 So.3d at 351. Factual findings of the trial court in reaching an award of costs are reviewed pursuant to the manifest error or clearly wrong standard of review. *Barre-Williams*, 365 So.3d at 768.

*Inclusion of commissions in base wages when calculating penalty wages*

When an employer has failed to pay wages owed to an employee, La. R.S. 23:632 provides for an award of penalty wages equivalent to "ninety days wages at the employee's daily rate of pay" in certain circumstances. UTC did not dispute that it owed penalty wages; rather, plaintiffs argue that the trial court erred when it refused to include plaintiffs' commissions when calculating their respective daily rates of pay to award penalty wages under La. R.S. 23:632.

Plaintiffs point out that Louisiana jurisprudence has permitted the use of commissions as a basis for penalty wages in cases where commissions constitute the former employee's entire earnings, and argue that the commissions owed in

this case amount to approximately 95% of their total earnings, while their base rate of pay was only approximately 5% of their total salary, introducing evidence into the record to support this representation at trial. Thus, they argue the trial court should have included their commissions when calculating penalty wages.

As seen above, the trial court granted UTC's motion for partial summary judgment on this issue in 2022, finding that penalty wages in this case would be grounded in plaintiffs' base pay, not including commissions. Plaintiffs sought supervisory review, and this Court denied the writ. *Harrelson v. UTC Laboratories, Inc.*, 22-478 (La. App. 5 Cir. 10/19/22) (unpublished writ disposition).[3] Plaintiffs did not seek review in the Louisiana Supreme Court.

Although plaintiffs correctly state that this Court may revisit this issue on appeal, our review of the prior writ disposition, now with the benefit of the designated record before us, does not warrant a different outcome. La. R.S. 23:632 does not indicate that commissions are to be included for purposes of calculating daily rate of pay. Statutes that authorize the imposition of penalties, or sanctions, are penal in nature and are to be strictly construed. *Saacks v. Mohawk Carpet Corp.*, 03-386 (La. App. 4 Cir. 8/20/03), 855 So.2d 359, 370, *writ denied*, 03-2632 (La. 12/12/03), 860 So.2d 1158. Courts interpreting La. R.S. 23:632 have concluded that commissions generally are not to be used when determining an employee's daily rate of pay for calculating penalty wages. *Stegall v. Orr Motors of Little Rock, Inc.*, 48,241 (La. App. 2 Cir. 6/26/13), 121 So.3d 684, 691, *writs denied*, 13-2106, 13-2107 (La. 11/22/13), 126 So.3d 486, and *writ denied*, 13-2402 (La. 11/22/13), 126 So.3d 493. Exceptions to the general rule that commissions are

---

[3] In the disposition, the panel noted that La. R.S. 23:632 does not specifically provide for the use of commissions as a basis for penalty wages, and the jurisprudence generally precludes such use, citing *Stegall v. Orr Motors of Little Rock, Inc.*, 48,241 (La. App. 2 Cir. 6/26/13), 121 So.3d 684, 691, *writs denied*, 13-2106, 13-2107 (La. 11/22/13), 126 So.3d 486, and *writ denied*, 13-2402 (La. 11/22/13), 126 So.3d 493; *Schuyten v. Superior Systems, Inc.*, 05-2358 (La. App. 1 Cir. 12/28/06), 952 So.2d 98, 107-108; and *Howser v. Carruth Mortgage Corp.*, 476 So.2d 830, 836 (La. App. 5 Cir. 1985), among other cases.

not included for purposes of calculating penalty wages may arise when a commission constitutes an employee's entire wages. *See*, *e.g.*, *Jeansonne v. Schmolke*, 09-1467, 09-1468, 10-0437 (La. App. 4 Cir. 5/19/10), 40 So.3d 347, 361-62 (rejecting an employer's argument that no penalty wages should be awarded because commissions ordinarily are not used to determine an employee's daily rate of pay for penalty-wage purposes, and the former employee worked solely on commission).

Here, we are not persuaded that the trial court erred in refusing to include the commissions when calculating plaintiffs' daily rate of pay for purposes of awarding penalty wages. The employment contracts guaranteed both Harrelson and Agee a base salary of $120,000 per year. The trial court calculated plaintiffs' "daily rate of pay" over the course of 90 days, per La. R.S. 23:632, using plaintiffs' base salary without commissions. Given that penal statutes are to be strictly construed, we find no error in the trial court's decision to limit plaintiffs' daily rate of pay calculation to plaintiffs' base pay, without commissions, when calculating the award of penalty wages.

The testimony at trial, as well as plaintiffs' employment contracts, indicate that plaintiffs' team members were compensated, at least in part, from the monthly 21% commissions that plaintiffs earned. The testimony did not establish how much of these commissions were personally retained by plaintiffs versus the portion that was paid to plaintiffs' team members, however. Were we to include commissions in plaintiffs' "daily rate of pay" in these circumstances, plaintiffs would receive penalties calculated on commissions that ultimately would not have been retained by them.[4] Plaintiffs' first assignment of error lacks merit.

---

[4] The trial court acknowledged this issue in Reasons for Judgment when discussing the award of plaintiffs' unpaid commissions, stating:

> The Court notes that Plaintiffs' contracts with UTC called for Plaintiffs to receive 21% of testing revenue received less variable commission payments

*Attorneys' Fees*

In their second assignment of error, plaintiffs argue that the trial court abused its discretion in refusing to award $1,713,426.50 in total attorneys' fees that they requested, especially where UTC did not object to these amounts at trial.[5] Furthermore, counsel for plaintiffs argue that they litigated their two clients' cases equally, and thus equal attorneys' fees should have been awarded to each. La. R.S. 23:632 mandates that a prevailing employee in a suit for unpaid wages recover attorneys' fees and costs from his employer, in addition to recovering the unpaid wages:

> C. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event of a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee….

Factors to be considered in determining the reasonableness of attorneys' fees include: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment and skill of the attorneys; (7) the number of appearances involved; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court's own

---

paid out on a monthly basis for cash flow. Plaintiffs had a sales team working for them who would have participated in these earnings and who are not parties to this litigation. The Court realizes that in some ways, this results in a windfall for the Plaintiffs; however, a ruling otherwise would be contrary to a plain reading of Exhibit A of Plaintiffs' Employment Agreements … and would result in a windfall to UTC.

[5] In the "Summary of Plaintiffs' Attorneys' Fees" exhibit offered as evidence at trial, plaintiffs stated that Meade Young LLC billed $1,446,100.00 in fees, and Phelps Dunbar LLP billed $254,482 in fees, for a total of $1,700,582.00. In their post-trial application for attorneys' fees and costs filed with the trial court, plaintiffs include an updated figure amounting to $1,713,426.50. Plaintiffs' memorandum in support of their post-trial application for attorneys' fees and costs indicates that Meade Young LLC spent 3,629 hours litigating the case since 2017, with 2,406 hours attributable to John Alden Meade, and 1,223 hours attributable to Adam G. Young. At Meade Young's billing rate of $400/hour, the total fees, according to plaintiffs, amounts to $1,451,600. Since October 2020, several attorneys at Phelps Dunbar LLP spent a total of 857.65 hours litigating the case. With varied billing rates, the total fees that Phelps billed amounted to $261,826.50.

knowledge. *Rivet v. State, Dep't of Transp. & Dev.*, 01-961 (La. 11/28/01), 800 So.2d 777, 780 n.3 (citing *State, Dep't of Transp. & Dev. v. Williamson*, 597 So.2d 439, 442 (La. 1992)).

The trial court in this case awarded James Agee $365,458.00 and awarded Shea Harrelson $703,858.00 in attorneys' fees, plus legal interest from the date of judgment, taking into consideration Section 8.16 of Plaintiffs' Employment Agreements, which states: "In the event of litigation in connection with this Agreement, the prevailing party shall be entitled to recover its/his/her legal fees and the costs associated with such litigation to the extent the aforementioned legal fees and costs are reasonable."

The trial court stated in Reasons for Judgment that "the Court specifically requested, but was not provided, more detailed evidence of the time expended by each attorney on each aspect of the case and the basis for the fees billed (i.e., the specific work done) by each attorney or professional on each matter." The court explained:

> Despite the lack of detailed contemporaneous and explicit billing records in the record, Plaintiffs did argue, and the Court was aware, that the case took sixty-seven (67) months to litigate against nine different law firms, and Plaintiffs engaged in extensive discovery, including "more than 130,000 pages from UTC alone," as well as eleven (11) depositions, some taking more than one day.

Although the trial court recognized that the attorneys participated in over 50 court appearances, and that the list of pleadings in the litigation was 40 pages, the court found it "impossible" to determine on the showing made whether there were "redundant, excessive, or unnecessary" hours billed by each attorney. The trial court therefore reduced the award that plaintiffs requested "due to inadequate documentation submitted in support of the fee request[.]"

Applying the *Rivet* factors, the trial court noted the length of the litigation, the extent of discovery, and the number of appearances required, awarding a total

of $1,069,316.00 in attorneys' fees. While this amount is less than the approximately $1.7 million that plaintiffs requested, it does not appear unreasonable, especially when considering that fees awarded to each plaintiff represents exactly one-half of the sum of the awards for (i) unpaid bonuses/commissions, (ii) Vantari & Ally commissions, and (iii) penalty wages. Nor are we persuaded by plaintiffs' argument that the attorneys' fees awarded to each of them should be equal, considering that one of the *Rivet* factors – the amount of money involved – was not the same for each plaintiff. Where Ms. Harrelson was awarded significantly more "unpaid bonuses and commissions" than Mr. Agee, the trial court did not abuse its discretion in refusing to award the same attorneys' fees to Mr. Agee that were awarded to Ms. Harrelson. And without more specificity in the attorney billing statements, we decline plaintiffs' invitation to increase the trial court's well considered award of attorneys' fees to each plaintiff.

Finally, the fact that UTC did not object to the specific amounts that plaintiffs requested is immaterial where the record plainly evidences UTC's acquiescence to attorneys' fees—as long as those fees were "reasonable." Courts have the inherent authority to regulate the practice of law, and thus may inquire as to the reasonableness of attorney's fees as part of that authority. *Rivet*, 800 So.2d at 782. Even if we might have determined the attorneys' fee awards differently, we cannot say the trial court abused its discretion when calculating these awards, nor have plaintiffs demonstrated with any specificity why the amounts awarded were unreasonable. Plaintiffs' second assignment of error lacks merit.

*Costs*

In assignment of error number three, plaintiffs contend that they should have been awarded a total of $141,113.34 in costs, or $65,489 each.[6] Under La. C.C.P.

---

[6] The $141,113.34 amount represents the plaintiffs' updated request for costs listed in their post-trial application for attorneys' fees and costs, which includes $10,948.27 in Westlaw Legal Research charges that were omitted from plaintiffs' evidence of costs introduced at trial, plus a

art. 1920, the trial court has great discretion in awarding costs and may do so in any equitable manner. *Scramuzza v. River Oaks Inc.*, 03-959 (La. App. 5 Cir. 3/30/04), 871 So.2d 522, 531, *writ denied*, 04-1088 (La. 6/25/04), 876 So.2d 839. The trial court awarded a total of $27,998.69 in costs, which it evenly divided between the two plaintiffs. The trial court looked to La. R.S. 13:4533, which provides: "The costs of the clerk, sheriff, witness' fees, costs of taking depositions and copies of acts used on the trial, and all other costs allocated by court, shall be taxed as costs." The trial court rejected plaintiffs' deposition costs and document costs, however, finding them taxable as costs only when "used on the trial," citing *Succession of Franz*, 242 La. 875, 882-83, 139 So.2d 216, 218-19 (La. 1962). The court also rejected the cost of the experts, reasoning that even though the experts may have assisted in mediating plaintiffs' claims, the experts did not testify at trial and thus an award of those costs was unwarranted. *See Andermann v. Rouillier*, 21-17 (La. App. 5 Cir. 5/26/21), 325 So.3d 1121, 1127 (finding that the party seeking to recover such fees bears the burden of proving the reasonable value of the expert witnesses' out-of-court work). Finally, under La. R.S. 9:4109 B(1)(b), if the case is not settled by mediation, the cost of mediation shall be taxed as costs when a final judgment is rendered. The trial court's award of costs therefore consisted of:

| | |
|---|---|
| 24th JDC JeffNet charges | 18,377.86 |
| Non JeffNet charges | 4,811.09 |
| Costs incurred by the Phelps firm | 3,042.74 |
| Mediation cost – John Perry | 1,767.00 |
| | |
| Total Costs Taxed | $27,998.69 |

few additional costs for JeffNet. At trial, plaintiffs' "Summary of Plaintiffs' Expenses" listed the total expenses as $130,978.77, broken down as follows:

| | |
|---|---|
| JeffNet (all) | 17,821.23 |
| Non JeffNet | 4,811.09 |
| Depositions | 21,405.69 |
| Phelps Costs | 4,413.07 |
| Database | 1,574.44 |
| Experts | 79,186.25 |
| Mediation | 1,767.00 |

As with our analysis of the trial court's awards of penalty wages and attorneys' fees, we find that the award of costs is supported by the applicable statutes and jurisprudence, and the trial court did not abuse its discretion. Plaintiffs' third assignment of error lacks merit.

## DECREE

For the foregoing reasons, the trial court's judgment is affirmed.

**<u>AFFIRMED</u>**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **NOVEMBER 2, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 23-CA-64

### E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HON. RAYMOND S. STEIB, JR. (DISTRICT JUDGE)
ADAM G. YOUNG (APPELLANT)          JAMES H. GILBERT (APPELLANT)          JOHN A. MEADE (APPELLANT)
RICHARD G. DUPLANTIER, JR. (OTHER)

### MAILED
CHRISTOPHER K. RALSTON (APPELLANT)          CLAYTON WHITE  (APPELLEE)
VIRGINIA P. STEWART (APPELLANT)               935 GRAVIER STREET
ATTORNEY AT LAW                               SUITE 2020
365 CANAL STREET                             NEW ORLEANS, LA 70112
SUITE 2000
NEW ORLEANS, LA 70130